Filed 6/6/24  Chomyk v. Christina Development Corp. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DWAYNE J. CHOMYK, | B330906 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 20STCV39869 |
| v. | |
| CHRISTINA DEVELOPMENT CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Colin P. Leis, Judge.  Affirmed.

Greenberg Glusker Fields Claman & Machtinger, Charles N. Shephard, Ricardo P. Cestero and Ira M. Steinberg for Defendant and Appellant.

The Cowan Law Firm and Jeffrey W. Cowan for Plaintiff and Respondent.

Christina Development Corporation (CDC) appeals from the trial court's order granting its former employee Dwayne J. Chomyk's motion to vacate the stay of his wrongful termination lawsuit under Code of Civil Procedure section 1281.98.[1]  Earlier, CDC had moved successfully to compel arbitration of Chomyk's lawsuit.  The arbitrator first was to decide the enforceability of the employer-drafted arbitration agreement, and Chomyk was waiting for that determination before formally submitting his claims to the arbitrator.  The issue presented is whether section 1281.98 applies to the arbitration CDC initiated at the court's direction.

We conclude that, in these unusual circumstances, section 1281.98 does apply.  We affirm.

## BACKGROUND

CDC is a real estate investment company that manages properties in the Los Angeles area.  On October 1, 2018, Chomyk began working for CDC as its director of portfolio management.  Chomyk signed an arbitration agreement with CDC on his first day of work.  CDC terminated Chomyk's employment less than two months later on November 26.

On October 16, 2020, Chomyk sued CDC for wrongful termination and other claims in the Los Angeles Superior Court.  Chomyk claimed he was fired because he was a whistleblower.  CDC moved to compel arbitration based on the arbitration agreement Chomyk had signed.  Chomyk opposed the motion on the grounds the agreement was unconscionable and procured

---

[1]     Undesignated statutory citations are to the Code of Civil Procedure.

2

by deceit and economic duress. The arbitration agreement included a delegation clause that gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability" of the arbitration agreement, including "any claim that all or any part of" the agreement was "void or voidable."

The court held an evidentiary hearing, at Chomyk's request, in June 2021. The "narrow issue" before the court was whether the delegation provision was enforceable. After taking the matter under submission, the court filed its intended statement of decision finding the delegation clause valid and granting CDC's motion. Chomyk filed objections, and the court issued its final statement of decision on September 21, 2021.

The court's order set an order to show cause re: initiation of arbitration (OSC) for November 5, 2021. Chomyk's counsel failed to appear "due to a calendaring mistake." At that hearing, the court apparently directed CDC, as the prevailing party on the motion to compel arbitration, to initiate the arbitration. CDC did so despite disagreeing with the court's position that the prevailing party, rather than the plaintiff, must initiate the arbitration.

On November 22, 2021, CDC filed an "employment arbitration rules demand for arbitration" with the American Arbitration Association (AAA). The parties' arbitration agreement provided that any arbitration "shall be in accordance with the then current Model Employment Arbitration Procedures" of AAA. CDC asserted four causes of action against Chomyk for: recovery of attorney fees incurred in moving to compel arbitration; a declaration that the arbitration agreement was enforceable; a declaration that Chomyk's claims arising from his termination were time barred under the contractual

3

limitations provision in the arbitration agreement; and damages for Chomyk's breach of a confidentiality agreement. CDC paid the initial AAA deposit.

The parties selected retired Los Angeles Superior Court Judge Joe Hilberman as the arbitrator. On October 17, 2022, in a joint status report, the parties advised the court they had agreed to defer any arbitration proceedings until after they participated in mediation on November 16, 2022. If the mediation failed, Judge Hilberman would set a briefing schedule to adjudicate the enforceability of the arbitration agreement.

The mediation failed. According to Chomyk's counsel's declaration, both parties' counsel participated in a January 17, 2023 hearing with Judge Hilberman. They agreed to a briefing schedule on the issue of the enforceability of the arbitration agreement. Chomyk's counsel declared Judge Hilberman agreed it would be wasteful for counsel to resubmit Chomyk's wrongful termination claims in the arbitration at that point, if Judge Hilberman ultimately were to find the arbitration agreement was unenforceable, and Chomyk's claims should be returned to the court.

On February 9, 2023, AAA sent an invoice to all counsel for CDC to pay $7,200 as a deposit for the hearing on the enforceability of the arbitration agreement "due . . . upon receipt." (Boldface and underscoring omitted.) The emailed transmittal letter stated, "As this arbitration is subject to California Code of Civil Procedure 1281.98, payment must be received 30 days from the date of this letter." (Boldface and italics omitted.) AAA emailed a courtesy reminder to counsel on February 27, 2023 that the $7,200 deposit was due on February 9, 2023. The email again noted the arbitration was

4

"subject to" section 1281.98 (and section 1281.97), requiring payment to be received within 30 days of the due date. On March 15, 2023, AAA emailed another courtesy reminder to counsel that the deposit was due and attached a new invoice. The reminder again stated the arbitration was subject to sections 1281.97 and 1281.98, and the payment must be received within 30 days of the due date. CDC paid the invoice the same day.

Chomyk's counsel replied to AAA's March 15, 2023 email the same day, informing AAA that, under sections 1281.97 and 1281.98, CDC had waived its right to compel arbitration because it had failed to pay the arbitration fees within 30 days of being billed. Counsel stated Chomyk therefore elected to proceed with his claims in court. Chomyk's counsel asked AAA to have Judge Hilberman confirm the arbitration proceeding had terminated and Chomyk's claims were to be remanded to the Los Angeles Superior Court. CDC disputed Chomyk's position. In response to counsel's email exchange over whether section 1281.98 applied here, Judge Hilberman stayed the arbitration proceedings so the superior court could determine the issue.

On March 27, 2023, Chomyk filed a motion in the superior court to vacate the stay of his lawsuit. Chomyk argued that, under sections 1281.97 and 1281.98, CDC's failure to pay arbitration fees within 30 days of their due date enabled Chomyk to withdraw from the arbitration and proceed with his claims in court.

CDC opposed the motion. It argued the statutes were intended to address situations where an employee has filed claims against an employer in arbitration, and the employer prevents the arbitration of the employee's claims against it by failing to pay required arbitration fees. Here, however,

5

as Chomyk had filed no claims against CDC in arbitration, he had no claims that could be withdrawn from the arbitration. In reply, Chomyk argued the statutes applied because the arbitration involved disputes arising from CDC's employment arbitration agreement. He argued the statutes did not require him to assert his wrongful termination claims before the arbitrator ruled on the enforceability of the arbitration agreement, and Judge Hilberman had "ruled" Chomyk need not formally re-assert his wrongful termination claims until after the arbitrator had determined whether the arbitration agreement was enforceable.

The court heard the motion on May 9, 2023.[2] It had issued a tentative ruling finding section 1281.98 applied, and Chomyk had exercised his right to withdraw from arbitration enabling him to resume litigating his wrongful termination lawsuit in court. At the hearing, CDC's counsel argued that, even if the statutes applied to an employer-filed arbitration, the only claims that could be "withdraw[n]" from arbitration were the claims CDC had filed with its demand "because those [were] the only claims that were ever submitted to the arbitrator." The court rejected that argument, stating, "I think you interpret 'claim' too narrowly. You don't interpret 'claim' within the spirit of the statute. And . . . I think . . . that's the departure point in our analysis, how you and I analyze . . . whether this statute applies to this case." Counsel continued, "Because we didn't

_____

[2] Chomyk's stayed action had been transferred to a different judicial officer from the one who had decided the motion to compel.

6

pay fees necessary to pursue our own claims, your honor seems to be saying that [Chomyk's] unfiled claims, which are in fact time barred, now somehow get resurrected and are allowed to be litigated in court, not even arbitrated. And that . . . doesn't seem consistent with the statute at all. This statute is designed to protect employees who have asserted claims in arbitration. And that's not the case before us."

Counsel for Chomyk responded that, in granting the motion to compel arbitration, the court noted it was considering only the narrow issue of the delegation provision's enforceability. Because the court found it was valid, the issue of whether the arbitration agreement was enforceable went to the arbitrator. Counsel reiterated that the "arbitrator agreed there's no reason to go through this exercise of formally reasserting claims from my filed lawsuit in superior court if the [arbitrator] is going to throw out the arbitration agreement."[3] Except for correcting a typographical error, the court adopted its tentative as its final ruling granting the motion to vacate.

Notice of entry of the court's order was served on May 11, 2023. CDC filed a timely notice of appeal on June 9, 2023. The court's order lifting the stay to permit Chomyk to resume litigating his wrongful termination lawsuit in court is " 'functional[ly] equivalent' " to an order denying a motion to compel arbitration " 'because both divert a case into court rather than arbitration.' " (*Williams v. West Coast Hospitals, Inc.* (2022)

---

[3] Counsel asserted that agreement was "in the record." The only evidence in the appellate record of the arbitrator having agreed Chomyk could defer formal filing of his claims, however, is counsel's declaration, filed in support of the motion to vacate.

86 Cal.App.5th 1054, 1064–1065.)  It thus is appealable.  (*Id.* at p. 1065; § 1294, subd. (a).)

## DISCUSSION

CDC contends the trial court erred in vacating the stay of Chomyk's wrongful termination lawsuit—imposed by its predecessor's earlier order granting CDC's motion to compel arbitration—because (1) section 1281.98 does not apply to employer-initiated arbitration proceedings, or (2) even if the statute applied, as Chomyk did not file any affirmative claims against CDC in the arbitration, it had no claim to "withdraw" to the superior court under section 1281.98.

**1.** ***Standards of review and statutory construction***

We review the trial court's interpretation of statutes and their application to undisputed facts de novo.  (*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077 (*Cvejic*).)  To the extent the court applies disputed facts to a statute, we review the court's factual findings for substantial evidence.  (See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 663.)  "When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom . . . ."  (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387.)

"When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.

8

If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.)

**2.**    ***Section 1281.98***

"Perceiving that a 'company's failure to pay the fees of an arbitration provider' as required by arbitration agreement or applicable law 'hinders the efficient resolution of disputes and contravenes public policy,' " in 2019 our Legislature passed Senate Bill No. 707, adding sections 1281.97 and 1281.98 to the California Arbitration Act. (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750 (*De Leon*), quoting Stats. 2019, ch. 870, § 1(c); see also *Suarez v. Superior Court of San Diego County* (2024) 99 Cal.App.5th 32, 36 [Legislature enacted sections 1281.97 and 1281.98 out of concern "with the fairness of adhesion contracts in the consumer and employment context that require the arbitration of disputes"].) As our colleagues in Division Eight explained, the Legislature enacted section 1281.98—the statute at issue here—"to curb a particular arbitration abuse. The abuse was that a defendant could force a case into arbitration but, once there, could refuse to pay the arbitration fees, thus effectively stalling the matter and stymying the plaintiff's effort to obtain relief. The Legislature called this 'procedural limbo.' " (*Cvejic, supra*, 92 Cal.App.5th at p. 1076, citing *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 634 (*Gallo*) [quoting legislative history].)

9

Section 1281.98 provides:

> "In an employment or consumer arbitration
> that requires, either expressly or through
> application of state or federal law or the rules
> of the arbitration provider, that the drafting
> party pay certain fees and costs during
> the pendency of an arbitration proceeding,
> if the fees or costs required to continue the
> arbitration proceeding are not paid within
> 30 days after the due date, the drafting party
> is in material breach of the arbitration
> agreement, is in default of the arbitration,
> and waives its right to compel the employee
> or consumer to proceed with that arbitration
> as a result of the material breach."  (§ 1281.98,
> subd. (a)(1).)

"Subdivision (b) of [section 1281.98] provides employees and consumers with a choice of forum upon breach:  They may elect to '[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction' or '[c]ontinue the arbitration proceeding' should the provider agree to continue."  (*Cvejic, supra*, 92 Cal.App.5th at p. 1076, quoting § 1281.98, subd. (b)(1) & (2).)[4]

Section 1281.97, on the other hand, concerns the "failure to timely pay 'the fees or costs to *initiate*' an arbitration."  (*De Leon,*

---

[4]     We will refer to the statute's application to employees and employers as this case does not involve a consumer.  "Employee" is defined to include a "former employee."  (§ 1280, subd. (f).)

10

*supra*, 85 Cal.App.5th at p. 750.)  "Otherwise, the provisions are analogous, and courts analyze them similarly."  (*Cvejic, supra*, 92 Cal.App.5th at p. 1077; *De Leon*, at p. 750 ["Sections 1281.97 and 1281.98 'largely parallel' each other."].)

The Legislature amended both statutes in 2021, effective January 1, 2022—after CDC filed its arbitration demand but before it failed to pay the invoice at issue—to require arbitrators to provide invoices for fees and costs to all parties and to state those invoices were due on receipt unless the arbitration agreement provided otherwise.  (§§ 1281.97, subd. (a)(2), 1281.98, subd. (a)(2); Stats. 2021, ch. 222, §§ 2–3; see *Cvejic, supra*, 92 Cal.App.5th at p. 1076.)  The first sentence of the paragraph added to section 1281.97 states:  "After an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the parties to the arbitration."  (§ 1281.97, subd. (a)(2).)  That initial clause is not part of the first sentence of section 1281.98, subdivision (a)(2).  It instead states:  "The arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration."  (§ 1281.98, subd. (a)(2).)

CDC frames the issues on appeal as "whether an 'employment or consumer arbitration' includes an arbitration in which the only claims at issue were asserted by the employer, and whether an employee may withdraw from arbitration claims that were never asserted in the arbitration."  (Underscoring omitted.)

11

**3.** ***The trial court did not err in applying section 1281.98***
   ***to the unique circumstances here***

Section 1281.98 applies to "employment . . . arbitration[s]" that require the party who drafted the arbitration agreement (i.e., the employer) to pay arbitration fees and costs due during the pendency of the arbitration.  (§1281.98, subd. (a)(1).)  CDC —the party that drafted the arbitration agreement—does not dispute it was obligated to pay the arbitration fees AAA billed it on February 9, 2023, and that it did not do so within 30 days of that date.[5]  Rather, CDC contends that, because the plain language and legislative history of the statutes make clear this was not an " 'employment arbitration,' " the 30-day deadline under section 1281.98 did not apply.

We have no doubt the Legislature contemplated the employee would be the claimant, rather than the respondent, when forced to arbitrate employment claims under an employer-drafted arbitration agreement.  As CDC argues, the first clause of section 1281.97, subdivision (a)(2)—"[a]fter an employee or consumer meets the filing requirements necessary to initiate an arbitration"—demonstrates as much.  Although section 1281.98 does not refer to the employee having to meet the above filing requirements, CDC notes sections 1281.97 and 1281.98 are part of the same statutory scheme and, "[a]s such, section 1281.97

---

[5]     Although the arbitration agreement provided otherwise, CDC apparently agreed in writing to pay all arbitration fees. And, as CDC notes, in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 110–111, our high court held that, where an agreement to arbitrate is a condition of employment, the employer must pay the arbitration fees.

12

'applies with equal force to the parallel provisions of section 1281.98.' " (Quoting *Gallo, supra*, 81 Cal.App.5th at p. 633, fn. 4 [but note *Gallo's* analysis of section 1281.97 was *on a different issue* that "appli[ed] with equal force to the parallel provisions of section 1281.98"].)  Not unreasonably, CDC asserts section 1281.98 applies to the continuation of the arbitration initiated by the employee, as referenced in section 1281.97.  CDC thus contends the above language demonstrates "an 'employment or consumer arbitration' must mean an arbitration initiated by an employee or consumer."  CDC argues that, as a result, the statutes do not apply if an arbitration is initiated "by someone other than an employee or a consumer," as was the case here.

    We do not agree.  That the employee must meet the initial filing requirements to initiate an arbitration to trigger the arbitrator to send the specified invoice does not require us to construe "employment . . . arbitration" as one *only* where the employee initiates the arbitration.  The Legislative history of Senate Bill No. 762—the bill that amended the statutes in 2021 to add the invoice requirements—refers to these two facts as separate occurrences:  "This bill . . . [r]equires an arbitration provider, *in an employment or consumer arbitration* that requires the drafting party to pay fees and costs"—both "before the arbitration can proceed" and "during the pendency of an arbitration"—"*and where the employee or consumer has met the filing requirements necessary to initiate the arbitration*," to provide to all parties an invoice for any fees and costs required before the arbitration can proceed or continue.  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 762 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 4, italics added.)

13

The arbitration CDC filed can be described only as an "employment arbitration." All of CDC's causes of action asserted in the arbitration arise from its employment relationship with Chomyk. And, except for its claim Chomyk breached a confidentiality agreement, CDC's arbitration claims directly stem from Chomyk's own lawsuit against CDC for wrongful termination. CDC's declaratory relief causes of action essentially are defenses to Chomyk's lawsuit. CDC asked for a declaration that (1) the arbitration agreement is enforceable against Chomyk—its defense to litigating Chomyk's action in court and the basis for its affirmative defense—and (2) Chomyk's claims are barred by the contractual statute of limitations provision included within the arbitration agreement—an affirmative defense that hinges on the enforceability of the arbitration agreement itself. Even CDC's claim for attorney fees arises from its own motion to compel arbitration of Chomyk's lawsuit and, again, relies on the enforceability of the arbitration agreement, which included the fee provision.

This is not a situation where CDC, wronged by Chomyk in the first instance, decided to bring causes of action against him by initiating an arbitration under the arbitration agreement. Perhaps an arbitration in that situation would not be considered an "employment arbitration." We need not decide that issue, however, as those are not the facts here. Chomyk first asserted wrongdoing by CDC in the parties' dispute. The only reason CDC is the arbitration claimant—rather than Chomyk—is that

14

the court directed CDC, as the prevailing party on the motion to compel arbitration, to initiate the arbitration proceedings.[6]

Moreover, CDC filed, and AAA conducted, the arbitration as an employment arbitration. CDC filed its arbitration demand on the employment arbitration rules demand for arbitration form. The AAA transmissions about the payment of fees due all stated section 1281.98 applied. And, AAA followed the invoice requirements of section 1281.98, subdivision (a)(2), even though it was CDC, rather than Chomyk, who had met the filing requirement to initiate the arbitration.

In any event, the statutes themselves, as well as the legislative history, make clear the Legislature's primary objective was to protect employees compelled by their employers to arbitrate their employment claims from having those claims delayed or stymied. The Legislature recognized the "significant harm" employers' failure timely to pay arbitration fees "can inflict" on employees. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 7.) The report by the State Assembly Committee on the Judiciary on Senate Bill No. 707 notes that, "[t]o ensure . . . a drafting party cannot unilaterally prevent a party from adjudicating their claims in the forum that the drafting party unilaterally foisted onto the claimant, [Senate Bill No. 707] would provide employees and consumers remedies if a drafting party refuses to pay." (*Id.* at p. 8.) The report describes Senate Bill

---

[6] This entire situation most likely could have been avoided had Chomyk's counsel appeared at the OSC hearing where the court apparently ordered CDC to get the arbitration ball rolling.

15

No. 707 as adding provisions "to enable employees and consumers to seek redress of their claims in a timely manner." (*Id*. at p. 7.) Even the amendments adding the invoice requirements were enacted "to encourage transparency around the due date of arbitration fees in order to prevent unnecessary delays in the resolution of disputes for workers and consumers bound by forced arbitration provisions." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 762, *supra*, at p. 4.)

In our view, application of section 1281.98 here—despite CDC's position as the arbitration claimant—serves these purposes. The trial court granted CDC's motion to compel arbitration of Chomyk's wrongful termination claims on the sole ground that the arbitration agreement's delegation clause was enforceable. The trial court thus deferred determination of Chomyk's contractual defense to the arbitration agreement— that it was unconscionable and procured through fraud and economic duress—to the arbitrator and stayed Chomyk's lawsuit. Accordingly, before any of Chomyk's claims against CDC could be adjudicated—whether in the arbitration or in court—the arbitrator first had to determine if the arbitration agreement was enforceable. That determination was before the arbitrator, not only through CDC's affirmative claim for declaratory relief, but also as Chomyk's original challenge or defense to CDC's motion to compel—and, really, the entirety of the arbitration proceedings. By delaying payment of arbitration fees, CDC thus could " 'stall[ ]' " the hearing on Chomyk's challenge to CDC's enforcement of the arbitration agreement against his wrongful termination claims. (*Gallo*, *supra*, 81 Cal.App.5th at p. 634.) Without a determination as to whether the arbitration agreement was enforceable, Chomyk's affirmative wrongful termination

16

claims against CDC would be in limbo—precisely the situation section 1281.98 was enacted to prevent.

CDC contends otherwise—that the statute was designed to protect employees who asserted claims of wrongdoing in arbitration, which Chomyk did not do, and, in any event, he had no claim to "withdraw" under section 1281.98. True, Chomyk had yet to file his wrongful termination claims in the pending arbitration. But the underlying facts leading to the procedural posture of this arbitration proceeding are unusual, to say the least. We thus do not agree, as CDC put it in its opposition to the motion to vacate, Chomyk had nothing that could be "blocked or delayed" by CDC's untimely payment of fees. In any event, Chomyk's counsel declared the arbitrator had decided—at a hearing attended by both parties' counsel—Chomyk could defer formally submitting his wrongful termination claims against CDC in the arbitration until after the arbitrator had decided whether the arbitration agreement was enforceable. In granting the motion to vacate, the trial court implicitly found Chomyk's counsel's declaration credible.[7] We will not reweigh that determination. (See *Christian Research Institute v. Alnor*

---

[7] CDC argues "[t]he assertion that the arbitrator granted permission orally is rank hearsay and should not be considered." CDC never filed evidentiary objections to Chomyk's counsel's declaration in the trial court. It thus has forfeited this objection to it on appeal. (*In re the Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 [failure to object to admission of affidavit as hearsay in the trial court "waives the defect[ ], and the affidavit becomes competent evidence"]; see also Evid. Code, § 353.)

(2008) 165 Cal.App.4th 1315, 1319 [reviewing court does not reweigh trial court's implicit credibility determinations].) The arbitrator's approach makes sense. It would be a waste of Chomyk's resources—and the arbitrator's and AAA's time—formally to file the wrongful termination claims in the arbitration only to have the arbitrator find the arbitration agreement unenforceable and return Chomyk's claims to court.

Moreover, nothing in the record suggests CDC objected at the January 2023 hearing to Chomyk's ability to defer formally submitting his wrongful termination claims. CDC cannot now complain Chomyk had to have formally submitted those claims to the arbitrator to be entitled to withdraw them from the arbitration under section 1281.98. (See AAA Employment Arbitration Rules and Mediation Procedures, rule 36 <https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf> [as of June 5, 2024], archived at <https://perma.cc/37ED-E4UC> (AAA Employment Rules) ["Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object."]; cf. *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].)[8]

---

[8] CDC also argued below that, under AAA rules, because Chomyk did not assert his wrongful termination claims as "cross-complaints" within 14 days of CDC having filed its arbitration, he forfeited his right to do so. (See AAA Employment Rules, rule 4(b)(iii) [respondent may "file a counterclaim with the AAA

18

Accordingly, when CDC failed to pay the billed arbitration fees within 30 days of their due date, it "waive[d] its right to compel [Chomyk] to proceed with that arbitration as a result of the material breach." (§ 1281.98, subd. (a)(1).) As "that arbitration" would have included Chomyk's wrongful termination claims had the arbitrator ruled against him on his challenge to the enforceability of the arbitration agreement, under the unique circumstance of this case, we conclude Chomyk could elect to withdraw those claims from arbitration and litigate them in court. (*Id.*, subd. (b)(1).)

---

within 15 days after the date" of AAA's letter acknowledging receipt of the arbitration demand, and must include the applicable filing fee].) Again, there is no evidence CDC objected to the arbitrator allowing Chomyk to defer filing his claims. Moreover, the AAA Employment Rules give the arbitrator discretion to allow new claims. (*Id.*, rule 5 ["After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator."].)

19

## DISPOSITION

The order granting respondent's motion to vacate the stay is affirmed.  In the interests of justice, the parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


LAVIN, Acting P. J.


ADAMS, J.